UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **CHARLES CHANDLER** | **CIVIL DOCKET NO. 6:23-cv-00677** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **TIM HOOPER** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

### MEMORANDUM RULING

Before the Court is the REPORT AND RECOMMENDATION ("R&R") of the Magistrate Judge previously filed herein. [Doc. 15]. The R&R makes recommendations as to the disposition of a PETITION FOR WRIT OF HABEAS CORPUS (the "Petition") filed by Charles Chandler (hereinafter, "Petitioner"). [Doc. 1]. The state filed objections to the recommendation [Doc. 16] and Petitioner filed a Response [Doc. 17]. After conducting an independent review of the record and upon careful consideration of the R&R, the state's objections are sustained and the Petitioner's PETITION FOR WRIT OF HABEAS CORPUS [Doc. 1] is DENIED.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

As recounted by the Louisiana Supreme Court ("LASC"), the facts of this case are as follows:

> Shortly before midnight on April 28, 2013, officers of the St. Mary Parish Sheriff's Office were dispatched to Columbus Avenue in Bayou Vista to investigate reports of gunshots. Officers found a crowd gathered around Wade Blackburn, Jr., who was shot and not responsive. He died at the scene. Eyewitnesses stated [Petitioner] had appeared on the scene agitated, looking for Mr. Blackburn, angrily confronted him, then shot him as they argued. [Petitioner] fled the scene and climbed into the back of a truck. The truck's owner drove off unaware [Petitioner] was hiding

in the back. Police apprehended [Petitioner]. A search of his bedroom revealed the weapon used in the shooting.

A unanimous St. Mary Parish jury found [Petitioner] guilty of second degree murder, La. R.S. 14:30.1, and possession of a firearm by a convicted felon, La. R.S. 14:95.1. Pursuant to [Petitioner's] motion for judgment of acquittal, the district court modified the second degree murder conviction, reducing it to manslaughter. The court of appeal reversed, reinstated the second degree murder conviction, and remanded for sentencing. *State v. Chandler*, 2015-1493 (La. App. 1st Cir. 2/24/16) (unpub'd), available at 2016 WL 759165, *writ denied*, 2016-0561 (La. 3/31/17), 217 So. 3d 359. On remand, [Petitioner] was sentenced to life imprisonment for the murder and 18 years for the firearm violation. The court of appeal affirmed. *State v. Chandler*, 2017-0962 (La. App. 1st Cir. 12/21/17), 240 So. 3d 950.

[Petitioner] timely applied for post-conviction relief. Among other arguments, [Petitioner] claimed a juror was not impartial, and trial counsel provided ineffective assistance for failing to challenge this juror for cause. The district court found the juror partiality complaint was waived when trial counsel neither objected nor exercised a challenge and that [Petitioner's] related claim of ineffective assistance of counsel required an evidentiary hearing. [Petitioner's] writ application regarding the juror bias claim (distinct from the ineffective assistance claim) was denied. *State v. Chandler*, 2019-01750 (La. 9/27/21), 324 So. 3d 88.

The district court then held an evidentiary hearing on the ineffective assistance claim. The juror testified she worked in various capacities for the district attorney's office for 25 years, eventually becoming the district attorney's secretary. She denied that her employment made her apprehensive about voting to acquit [Petitioner]. The prosecutor testified he had few voir dire questions for this juror because he believed, based on his familiarity with her, she would decide the case on the evidence and the instructions provided by the court. Defense counsel testified to his longstanding familiarity with this juror, including having coffee with her at least 50 times, and that he had a "gut feeling" she would be fair. The district court denied the post-conviction relief application. The court of appeal reversed. … The court of appeal found trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms when a prospective juror was not challenged for cause for her employment with the district attorney. The court of appeal also found [Petitioner] suffered prejudice when that juror, initially an alternate, was then seated on the jury.

*State v. Chandler*, 362 So. 3d 347, 349–50 (La. 2023).

The State of Louisiana thereafter sought a writ of certiorari from the LASC, which was granted on December 20, 2020. *State v. Chandler*, 351 So. 3d 705 (La. 2020). The LASC vacated the opinion of the Louisiana First Circuit Court of Appeal and reinstated Petitioner's conviction. *Chandler*, 362 So. 3d 347.

On May 20, 2023, Petitioner filed the instant Petition. [Doc. 1]. Petitioner submits that his claims were properly exhausted by the state judiciary and were timely filed. [Doc. 1-1, pp. 6-8]. Substantively, Petitioner asks this Court to vacate his conviction under the "implied bias doctrine," which Petitioner contends is clearly established under federal law. In this regard, Petitioner argues that trial counsel was ineffective for failing to challenge Juror Rachal for cause and that "the seating of a biased juror who should have been dismissed for cause requires reversal of the conviction." *Id.* at pp. 6-13, 16. Petitioner asserts that the LASC's opinion reinstating his conviction was contrary to, or involved an unreasonable application of, clearly established federal law. *Id.* at pp.18-21.

The state filed its response on August 29, 2023, in which it argues that the implied bias doctrine is *not* clearly established under federal law. [Doc. 9-1, p. 9]. The state asserts that because the implied bias of a juror should not be presumed as a matter of law, Petitioner's *Strickland* claim fails unless he can prove: (i) actual bias of Juror Rachal and (ii) prejudice. *Id.* at pp. 12-15. On September 13, 2023, Petitioner filed a reply in which he re-urges his same arguments and further maintains that the "last reasoned" state court ruling that should be considered by this Court is the opinion rendered by the state court of appeal. [Doc. 14, pp. 2-3].

The Magistrate Judge issued an R&R on October 9, 2024. [Doc. 15]. The R&R recommends that Petitioner's application for a writ of habeas corpus be granted, and the matter remanded to the state court for a new trial. [Doc. 15]. In reaching this conclusion, the Magistrate Judge found that: (i) the implied bias doctrine is clearly established under federal law; (ii) counsel was ineffective in failing to challenge Juror Rachal for cause; (iii) the last reasoned decision in this matter was rendered by the state court of appeal; and (iv) the LASC misinterpreted federal law when it "made no finding on whether counsel was deficient under *Strickland* or whether Juror Rachal's employment … was the sort that endangered an unacceptable risk of implied bias[.]" *Id.* at pp. 17-18.

The state timely filed objections [Doc. 16], and Petitioner subsequently filed responses to the objections [Doc. 17]. Both parties recapitulate their arguments presented above. In addition, the state contends that the R&R fails to give appropriate deference to the LASC and improperly speculates that Juror Rachal tainted jury deliberations. [Doc. 16]. In response, Petitioner contends that a showing of actual prejudice is not necessary because *Strickland* prejudice can be established by a denial of one's right to an impartial jury. [Doc. 17, p. 14]. Following the timely filing of objections by all parties, these issues are now ripe for *de novo* review. Based on an independent review of the record, the PETITION FOR WRIT OF HABEAS CORPUS [Doc. 1] is DENIED.

## LAW AND ANALYSIS

### I. The Antiterrorism and Effective Death Penalty Act

This habeas application is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C § 2254. As provided by 28 U.S.C § 2254, this Court must defer to state court proceedings unless they: "(1) resulted in a decision that was [either (i)] contrary to, or [(ii)] involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C § 2254.[1] "The deference of Section 2254(d) is due when the state court has adjudicated the petitioner's claim on the merits." *Moore*, 313 F.3d at 881. If the last state court decision on the merits is not "accompanied with reasons for its decision[,]" the habeas court must "look through" to the "last state-court decision that does provide a relevant rationale and then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. 122, 138 S. Ct. 1188, 200 L.Ed.2d 530 (2018).

Here, Petitioner does not challenge the state courts' factual findings, but only contends that the LASC's opinion was "contrary to, or involved an unreasonable application of, clearly established Federal law[.]" 28 U.S.C § 2254. A state court decision is contrary to clearly established federal law "only if it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if it resolves 'a

---

[1] *See Moore v. Cockrell,* 313 F.3d 880, 881 (5th Cir. 2002) ("A claim of ineffective assistance of counsel … is a mixed question of law and fact and should be reviewed under the 'contrary to' and 'unreasonable application' prong of 28 U.S.C. § 2254(d).").

Page **5** of **17**

case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Langley v. Prince*, 926 F.3d 145, 156 (5th Cir. 2019), *quoting Terry Williams v. Taylor*, 529 U.S. 362, 413, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000). Alternatively, under the "unreasonable application" prong, a prisoner must show that "the state court was so wrong that the error was 'well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* at 156. "Under the [AEDPA] a habeas court must determine what arguments or theories supported, or could have supported, the state court's decision, and then it must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court." *Harrington v. Richter*, 562 U.S. 86, 101, 131 S. Ct. 770, 785, 178 L.Ed.2d 624 (2011). Even if a prisoner can meet one of these standards, he must still "show, on de novo review, that [he is] 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Langley*, 926 F.3d at 156.

## II. Ineffective Assistance of Counsel Claim

As noted above, Petitioner's claim rests on his contention that his trial attorney was ineffective for failing to strike the district attorney's secretary from the jury. To establish ineffective assistance of counsel, Petitioner must show: (i) that defense counsel's performance was deficient; and (ii) that the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668 (1984). Prejudice is established by proving "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Under the AEDPA, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly[.]'" *Id.* at 105 (citations omitted).

The Court begins by turning to the "last related state-court decision" that provides a "relevant rationale" for Petitioner's claim, which is the opinion of the LASC. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192, 200 L.Ed.2d 530 (2018).[2] The LASC's opinion provides clear reasoning in reaching its conclusion that Petitioner did not establish prejudice under *Strickland* because: (i) the seating of an allegedly biased juror is not one of the rare circumstances that merits a presumption of prejudice under *Strickland*; and (ii) the "totality of evidence against [Petitioner] was overwhelmingly in favor of guilt." *Chandler*, 362 So. 3d at 351, 353. The LASC did not address the deficiency prong of the *Strickland* analysis because "failure to prove"

---

[2] The R&R was incorrect in finding the LASC's opinion failed to meet this standard. As explained by the Supreme Court, a state court does not give a reasoned opinion on the merits when, for example, "the decision may consist of a one-word order, such as 'affirmed' or 'denied.'" *Id.* This is clearly not the case here. *See Chandler*, 362 So. 3d 347.

either prong of *Strickland* "is fatal to an ineffective assistance of counsel claim." *Id.* at 350.

Petitioner's claim fails under the AEDPA for several reasons. First, the LASC did not act contrary to clearly established federal law when it applied *Strickland*'s prejudice prong to Petitioner's ineffective assistance claim rather than simply presuming prejudice under the implied bias doctrine.[3] Rather, the law is clear that counsel's failure to strike an allegedly biased juror does not fall into the very narrow set of circumstances in which prejudice can be presumed for purposes of an ineffective assistance claim under the standard set forth in *U.S. v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L.Ed.2d 657 (1984), and its progeny.[4] *See Canfield v. Lumpkin,* 998 F.3d 242, 249, n. 5 (5th Cir. 2021) ("Prejudice is presumed in a narrow category of cases, none of which is present here."); *Parr v. Thaler*, 481 F. App'x 872, 875–76 (5th Cir. 2012) ("Parr asserts that no prejudice need be shown under *Strickland* if counsel allow the impaneling of a biased juror. … [T]here is no support for applying *United States v. Cronic*.").

---

[3] In *United States v. Bishop*, 264 F.3d 535 (5th Cir. 2001), the Fifth Circuit explained the implied bias doctrine as follows: "In the majority of situations, the party seeking a new trial on the basis of juror bias must demonstrate bias through admission or factual proof; bias may, however, be implied or presumed in extreme circumstances, including when the juror is employed by the prosecuting agency, is a close relative of a participant in the trial, or is somehow involved in the transaction that is the subject of the trial."

[4] To presume prejudice for an ineffective assistance of counsel claim, *Cronic*, 466 U.S. 648, and its progeny require "a complete denial of counsel" or an entire failure to "subject the prosecution's case to meaningful adversarial testing." *Woodward v. Epps*, 580 F.3d 318, 326 (5th Cir. 2009), *citing Cronic*, 466 U.S. 648.

Next, to the extent that Petitioner alleges generally that the presence of a biased juror is a "structural error" which merits the presumption of prejudice under *Strickland*, this argument also fails.[5] To start, it is unclear whether an allegation of juror bias constitutes a structural error.[6] As explained by the Fifth Circuit, "[i]f there is an open question, the law is not clearly established." *Canfield,* 998 F.3d at 249, n. 25. Even if a biased juror does create a structural error, *Weaver v. Massachusetts*, 582 U.S. 286, 137 S. Ct. 1899, 198 L.Ed.2d 420 (2017), forecloses relief to the Petitioner in this procedural posture. In *Weaver*, the court held that "where [a structural] error is neither preserved nor raised on direct review but is raised later via an ineffective-assistance-of-counsel claim, the defendant must demonstrate prejudice to secure a new trial." *Id.* at 1907-13. Just last year, the Tenth Circuit faced a nearly identical issue as the one before this Court and denied relief in reliance on *Weaver*. *See Fairbourn v. Morden*, 2023 WL 3563026 (10th Cir. May 19, 2023), *cert. denied*, 144 S. Ct. 229, 217 L.Ed.2d 100 (2023). And this was already the law in the Fifth Circuit before *Weaver*. *See Virgil,* 446 F.3d at 607, n. 35, n. 36. As such, the

---

[5] Structural errors are errors which "infect[] entire trial process[es], such as a biased trial judge or denial of counsel to defendant." *Burgess v. Dretke*, 350 F.3d 461 (5th Cir. 2003). For structural errors "where there is an objection at trial and the issue is raised on direct appeal, the defendant generally is entitled to 'automatic reversal' regardless of the error's actual 'effect on the outcome.'" *Weaver*, 582 U.S. at 299, *citing Neder v. United States*, 527 U.S. 1, 7, 119 S. Ct. 1827, 144 L.Ed.2d 35 (1999).

[6] See *Canfield*, 998 F.3d at 249, n. 25. *See also Austin v. Davis*, 876 F.3d 757, 803 (5th Cir. 2017) (Owen, J., concurring) ("The Supreme Court has never held that juror bias is structural error requiring automatic reversal."). *Contra Virgil v. Dretke*, 446 F.3d 598, 607, n. 35, n. 36 (5th Cir. 2006) ("[I]t is clearly established that the Supreme Court views the denial of the right to an impartial decisionmaker to be such an error that taints any resulting conviction with constitutional infirmity.").

LASC did not act contrary to clearly established law in applying *Strickland*'s prejudice prong to Petitioner's ineffective assistance of counsel claim.[7]

Having established that *Strickland* was the proper standard to apply to Petitioner's claims, the Court now turns to whether the LASC was reasonable in its application of *Strickland*. In this regard, as noted above, the Court finds that the LASC was reasonable in declining to consider the deficiency prong of *Strickland* because it found that Petitioner failed to show sufficient prejudice. *Chandler*, 382 So. 3d at 352. If a petitioner fails to prove one prong, it is not necessary to analyze the other one. *Armstead v. Scott,* 37 F.3d 202, 210 (5th Cir. 1994); *Strickland,* 466 U.S. at 697.

After careful consideration, this Court also finds that the LASC was reasonable in finding a lack of prejudice under *Strickland* because of the overwhelming evidence of Petitioner's guilt presented at trial. The LASC characterized the evidence presented at trial as follows: "While there was some conflicted testimony from eyewitnesses over both the extent the victim resisted and any struggle over the gun, 'the bulk of the testimony supported a finding that the shooting was intentional and that [Petitioner] was in control of the weapon when he fired the three shots.' The

---

[7] For further support, *see Bell v. Quintero,* 125 S. Ct. 2240, 2242 161 L.Ed.2d 506 (2005) (Thomas, J., dissenting to denial of certiorari) ("The Court of Appeals' holding also rests on a confusion-the idea that the presence of a structural error, by itself, is necessarily related to counsel's deficient performance and warrants a presumption of prejudice. … The *Cronic* presumption is based on the notion that certain 'circumstances ... are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.' … Yet there is no close correlation between counsel's performance and whether a trial was infected with structural error, much less one so close as to justify a presumption that counsel was ineffective.").

verdict was unanimous." *Chandler*, 362 So. 3d 347 at 352, *quoting Chandler*, 217 So. 3d 359 (La. App. 1st Cir. 2016).

Although it is possible that this Court would have weighed the evidence differently if undersigned were the trial judge in this matter or reviewing it on direct appeal, the LASC's analysis of the evidence in this case and conclusion that the result of the proceeding would not have been different "but-for Juror Rachal" is far from *unreasonable* under the standard set forth in the AEDPA.[8] For instance, the jury heard testimony from six eyewitnesses to the shooting, three of which heard Petitioner state "I'm 'gunna' catch a murder charge" while looking for the victim prior to the shooting. *Chandler*, 217 So. 3d 359. Further, the jury heard testimony from numerous witnesses that Petitioner was agitated prior to the shooting and testimony from a forensic expert that the gun was touching the victim at the time of the gunshot. *Id.* Considering this evidence presented at trial, the LASC's finding of a lack of prejudice for counsel's failure to challenge Juror Rachal is not "beyond any possibility for fairminded disagreement." *Langley,* 926 F.3d at 156. *See Strickland,* 466 U.S. at 687 ("[A] verdict or conclusion only weakly supported by the record is more likely to

---

[8] As discussed *supra*, the state trial court reduced Petitioner's second-degree murder conviction to manslaughter. *Chandler*, 362 So. 3d at 349. However, the court of appeal reversed, reinstating the second-degree murder conviction. *Id.* The Court acknowledges that this may suggest a lack of overwhelming evidence regarding Petitioner's mens rea, especially considering that "determinations of demeanor and credibility … are peculiarly within a trial judge's province." *Wainwright v. Witt*, 469 U.S. 412, 428, 105 S. Ct. 844, 854, 83 L.Ed.2d 841 (1985). However, under the AEDPA, the Court is unable to adjudicate this matter like a *Strickland* claim on *de novo* review. *See Harrington,* 562 U.S. at 102 (it is improper to perform a *de novo* review of a *Strickland* claim on habeas review; "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").

have been affected by errors than one with overwhelming record support."); *Canfield, supra,* 998 F.3d 248 (state court was not unreasonable in finding a lack of prejudice because of overwhelming evidence of the defendant's guilt, despite allegations of a biased juror); *Sanchez v. Davis*, 936 F.3d 300, 307 (5th Cir 2019) (no prejudice given the defendant's overwhelming evidence of guilt); *Harrington, supra,* 562 U.S. at 113 (same).

And to the extent any doubt remains regarding the LASC's application of the prejudice prong, the state court's determination controls. The LASC "correctly identified the proper prejudice standard under *Strickland*" and did not apply this standard in a manifestly unreasonable manner.[9] *See Canfield,* 998 F.3d at 249. Further, as established herein, there is no materially indistinguishable Supreme Court precedent requiring a different outcome, *i.e.*, the presumption of prejudice under *Strickland* due to a biased juror. As such, habeas relief must be denied because the LASC's conclusion was not contrary to, or an unreasonable application of, clearly established federal law.[10]

---

[9] Like the LASC, this Court need not determine whether Juror Rachal was biased because Petitioner's *Strickland* claim cannot survive without the requisite showing of prejudice.

[10] The Court notes that its conclusion is distinguishable from the facts of *Virgil, supra,* 446 F.3d 598, in which the Fifth Circuit found *Strickland's* prejudice requirement was met in a case involving biased jurors. First, *Virgil* involved a claim of actual bias, as opposed to Petitioner's claim of implied bias in this action. *Id.* Second, as discussed above, *Virgil* did *not* find prejudice through a presumption. Rather, *Virgil* found prejudice based on the *facts of the case*, which involved two jurors who openly stated they could not be fair and impartial and a failure by defense counsel to "explore the depth or intensity of either juror's bias." *Id.* This aligns with the LASC's approach: "Just as cause challenges against potential jurors are evaluated case-by-case, prejudice from not exercising a cause challenge must be evaluated *case-by-case.*" *Chandler,* 362 So. 3d at 352–53 (emphasis added). Moreover, in contrast with *Virgil,* Juror Rachal was found to have no actual bias at an evidentiary hearing held by the

### III.   Structural Juror Bias Claim

In the alternative, it is unclear whether Petitioner intends to raise a separate Sixth Amendment juror bias claim independent of his *Strickland* claim.  To provide context for its analysis, the Court begins by highlighting the relevant procedural history.  Petitioner's application for post-conviction relief in state court contained two independent claims: (i) a Sixth Amendment structural error claim for the presence of Juror Rachal on Petitioner's jury and (ii) an ineffective assistance of counsel claim for counsel's failure to challenge Juror Rachal.  [Doc. 10-5, pp. 166-67].  The trial court denied both claims.  *Id*. at pp. 169, 194.  On his structural juror bias claim, Petitioner filed writs with the state appellate and supreme court, both of which were denied.  *Id*. at pp. 176, 193.  For his ineffective assistance claim, Petitioner filed writs again to both the state appellate and supreme courts, both of which were granted.  *Id*. at p. 227; *Chandler*, 362 So. 3d 347.  The state appellate court held in favor of Petitioner [Doc. 10-5, p. 227] and the LASC reversed.  *Chandler*, 362 So. 3d 347.

To the extent Petitioner is attempting to raise an independent juror bias claim, it fails for three reasons.  First, "[a] federal court 'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'"  *Ricks v. Lumpkin*, 2024 WL 4660916, at *2 (5th Cir. Nov. 4, 2024), *citing Coleman v.*

---

state trial wherein counsel provided an explanation for his decision not to challenge Juror Rachal. *Chandler*, 362 So. 3d at 349-50.

*Thompson*, 501 U.S. 722, 729, 111 S. Ct. 2546, 115 L.Ed.2d 640 (1991).[11] Here, the state trial court dismissed Petitioner's structural juror bias claim *solely* on state procedural grounds,[12] finding that the claim was waived when Petitioner failed to object to Juror Rachal at trial. [Doc. 10-5, p. 169]. As such, because Petitioner's independent juror bias claim is procedurally defaulted, and he has not shown cause or prejudice to overcome it,[13] it is improper for the Court to consider this claim.

Second, it is unclear whether Petitioner's habeas papers can be fairly read to assert an independent juror bias claim. In his habeas Petition, he only identified *one* ground for relief: "Ground one: INEFFECTIVE ASSISTANCE OF COUNSEL: FAILURE TO CHALLENGE THE SEATING OF DISTRICT ATTORNEY'S PERSONAL SECRETRARY ON PETITIONER'S PETIT JURY." [Doc. 1, p. 9]. Likewise, in the brief Petitioner filed contemporaneously with his Petition, there is a

---

[11] *See also Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004) (the direct appeal rule is "an independent state law ground that bars habeas review."). *Id.*

[12] The Court notes that the "last reasoned" opinion on Petitioner's independent juror bias claim was that which was rendered by the state trial court. *See* [Doc. 10-5, p. 169]. When the last state court decision on the merits does not "explain its opinion" in a "reasoned opinion," a federal habeas court must "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 125. Here, both the state appeal court and the LASC denied writs with no opinion. [Doc. 10-7, pp. 176, 193]. As such, it is presumed they adopted the reasoning of the state trial court, and the Court must "look through" to the trial court's ruling.

[13] "In all cases in which state prisoner has defaulted his or her federal claims in state court pursuant to independent and adequate state procedural rule, federal habeas review of claims is barred unless prisoner can demonstrate cause for default and actual prejudice as result of alleged violation of federal law, or demonstrate that failure to consider claims will result in fundamental miscarriage of justice." *Coleman*, 501 U.S. 772 (citing 28 U.S.C.A. § 2254).

discussion of the Sixth Amendment right to an impartial jury, but these arguments appear to merely provide support for Petitioner's *Strickland* claim.[14] Moreover, in contrast with his current Petition, Petitioner's prior writ applications on this claim in state court clearly lay out the issue presented as an independent structural error claim.[15] If Petitioner disagreed with the LASC's denial of writ on this claim, he should have addressed this issue in his habeas Petition or supporting brief. Therefore, it appears likely that Petitioner did not properly present an independent claim of juror bias before this Court.

Third, it is unclear whether the implied bias doctrine is clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). To meet this burden, Petitioner must "point to a relevant holding from the Supreme Court," as opposed to dicta. *Granier v. Hooper*, 2023 WL 4554903, at *3 (5th Cir. July 17, 2023), *cert. denied*, 144 S. Ct. 2610 (2024). *Terry Williams*, *supra*, 529 U.S. at 412. Moreover, "'it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that

---

[14] For instance, Petitioner asserts "[Juror Rachal's] implied bias as the personal secretary of District Attorney Bo Duhe would have resulted in a biased jury that could not constitutionally convict. The Louisiana Supreme Court's denial of Petitioner's state collateral attack was contrary to the U.S. Supreme Court's holding in *Strickland*[.]" *Id.* at p. 21.

[15] For example, in his writ to the LASC on this claim, Petitioner set forth the issue presented as follows: "The seating of the District Attorney's personal secretary on Petitioner's petit jury created a non-waivable, irretractable *structural error*, apparent on the record, and actionable on post-conviction notwithstanding trial counsel's failure to preserve the issue for appeal." [Doc. 10-7, p. 184] (emphasis added). Further, Petitioner discussed in-depth the implied bias doctrine, arguing it caused a structural error meriting reversal despite Louisiana law requiring a contemporaneous objection to preserve the issue for appeal or post-conviction relief. *Id.* at p. 187.

has not been squarely established by [the Supreme] Court.'" *Harrington, supra,* 562 U.S. at 101. Far from being clearly established, a review of the relevant cases show that the implied bias doctrine has not been addressed in a uniform or clear manner either by the Supreme Court[16] or the Fifth Circuit.[17] Therefore, to the extent

---

[16] For United States Supreme Court cases that suggest the doctrine is not clearly established, *see United States v. Wood,* 299 U.S. 123, 133, 57 S. Ct. 177, 179, 81 L.Ed. 78 (1936) (often cited as the origin of the implied bias doctrine); *Dennis v. United States,* 339 U.S. 162, 167, 70 S. Ct. 519, 94 L.Ed. 734 (1950*)* ("A holding of implied bias to disqualify jurors because of their relationship with the Government is no longer permissible. ... Preservation of the opportunity to prove actual bias is a guarantee of a defendant's right to an impartial jury."); *Remmer v. United States* ("*Remmer I*")*,* 347 U.S. 227, 74 S. Ct. 450, 98 L.Ed. 654 (1954) ("We therefore vacate the judgment of the Court of Appeals and remand the case to the District Court with directions to hold a hearing to determine whether the incident complained of was harmful to the petitioner, and if after hearing it is found to have been harmful, to grant a new trial."); *Smith v. Phillips*, 455 U.S. 209, 102 S. Ct. 940, 71 L.Ed.2d 78 (1982) ("This Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias."). But, for cases in support of the doctrine being clearly established federal law, *see Smith*, 455 U.S. at 222 (O'Connor, J., concurring) ("I concur in the Court's opinion, but write separately to express my view that the opinion does not foreclose the use of 'implied bias' in appropriate circumstances."); *Remmer v. United States* ("*Remmer II*")*,* 350 U.S. 377, 381 76 S. Ct. 425, 100 L.Ed. 435 (1956) ("We think this evidence, covering the total picture, reveals such a state of facts that neither Mr. Smith *nor anyone else* could say that he was not affected in his freedom of action as a juror. … He had been subjected to extraneous influences to which no juror should be subjected, for it is the law's objective to guard jealously the sanctity of the jury's right to operate as freely as possible from outside unauthorized intrusions purposefully made.") (emphasis added).

[17] For Fifth Circuit cases in support of the doctrine being clearly established federal law, *see Andrews v. Collins*, 21 F.3d 612, 620 (5th Cir. 1994) ("As an initial matter, we note that 'the Supreme Court has never explicitly adopted or rejected the doctrine of implied bias. … However, 'there are some extreme situations that would justify a finding of implied bias.'"); *Solis v. Cockrell,* 342 F.3d 392, 395-96 (5th Cir. 2003) ("Following Justice O'Connor's concurrence in *Smith* our circuit has recognized the implied bias doctrine, albeit with carefully watched limits."); *Brooks*, 418 F.3d at 329 ("We maintain that the doctrine of implied bias is 'clearly established Federal law as determined by the Supreme Court.'"). But, for cases that suggest the doctrine is not clearly established, *see Uranga v. Davis,* 893 F.3d 282, 288 (5th Cir. 2018) ("Both sides presented persuasive arguments [about whether the implied bias doctrine is clearly established under federal law] and cite language from our cases that can be read to support each side of the argument. Other circuits are split on the question. … In this case, however, it is unnecessary for us to delve into this question based upon the peculiar facts in this record."); *Buckner v. Davis*, 945 F.3d 906, 912–14 (5th Cir. 2019) ("Although this Court has discussed implied bias in several prior cases, we recently

Page **16** of **17**

Petitioner intends to raise a structural error implied bias claim independent of his *Strickland* claim, this claim likewise fails.

## CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that the State's objections [Doc. 16] to the Magistrate Judge's Report and Recommendations [Doc. 15] are SUSTAINED.

IT IS FURTHER ORDERED that Chandler's Petition [Doc. 1] is DENIED and DISMISSED WITH PREJUDICE.

THUS, DONE AND SIGNED in Chambers on the 20th day of December 2024.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE

---

noted in *Uranga v. Davis* that it was unclear whether this court has recognized the implied-bias doctrine as clearly established federal law."); *Craaybeek, supra,* 855 F. App'x at 947 ("But like recent panels of this court, we decline to 'revisit[] whether this Court recognizes the implied-bias doctrine as clearly established law."); *Granier*, 2023 WL 4554903 ("But Granier can point to no such holding. The best he can muster is Justice O'Connor's concurrence in *Smith v. Phillips*, and Justice Brennan's concurrence in *McDonough Power Equipment*. But concurrences do not create clearly established law. … Accordingly, we cannot rely on these authorities, and Granier's bias claims fail.")  (citations omitted).